IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BELINDA STARKS, o/b/o J.L.W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07cv539-WC |
| ) | [WO] |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Belinda Starks (Starks) applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (2000), on behalf of her son, J.L.W. (the claimant), alleging that J.L.W. was disabled. Her application was denied at the initial administrative level. Starks then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (the Commissioner).[1] See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. §

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Plf.'s Consent to Jurisdiction (Doc. #9); Def.'s Consent to Jurisdiction (Doc. #10). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES AND REMANDS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 1382c(a)(3)(C)(i), a person under the age of 18 is disabled (and hence entitled to disability benefits) if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2] In determining whether a child is disabled, the Commissioner employs the following sequential evaluation process. See 20 C.F.R. § 416.924 (2007).

>   (1) Is the person presently not engaged in substantial gainful activity?
>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"), and also meet the twelve-month duration requirement?[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] Part A of the Listing of Impairments applies to children and adults; Part B applies to children only. In dealing with a child's case, the Commissioner looks first to Part B, then to Part A. 20 C.F.R. § 416.925(b); Wilkinson v. Bowen, 847 F.2d 660, 661 (11th

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

The standard of review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The Court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

### III. DISCUSSION

#### A. *Introduction*

The claimant was approximately 22-months old at the time of the hearing before

---

Cir. 1987).

the ALJ. Tr. at 212-13. Following the administrative hearing, the ALJ found the claimant had not engaged in substantial gainful activity during any part of the period under adjudication (Step 1). The ALJ then concluded the claimant had five severe impairments under Step 2: asthma, possible small hearing defect in right ear, gastroesophageal reflux disease (GERD), heart murmur, and thrush in oral cavity. Tr. at 18. Nonetheless, the ALJ concluded these impairments, while severe, did not meet or medically or functionally equal[4] in severity the criteria for any impairment in the Listing of Impairments, as the claimant did not have an "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning. Consequently, the ALJ

---

[4]Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Secretary] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. The regulations state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

Id. § 416.926a(e)(2)(iii). An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i). It can be shown by a valid score on a standardized test that is three or more standard deviations below the mean. Id.

found the claimant was not disabled. Id. at 19.

   B.   *Starks's Claims*

The claimant presents five issues for review: (1) whether substantial evidence supports the ALJ's decision at Step 3 that the claimant did not meet or equal any Listing of Impairments and, in particular, Listing § 103.03C2; (2) whether the ALJ misstated and relied upon the misstated testimony of the medical expert (ME) in reaching his Step 3 determination; (3) whether the ALJ properly evaluated the claimant's combination of impairments; (4) whether substantial evidence supports the ALJ's decision that the claimant's severe impairments did not functionally equal any listed impairment. See Plf.'s Mem. Law in Supp. of Plf.'s Arg. (Doc. #12). at 4-9 (Plf.'s Br.). The Commissioner claims the ALJ made proper determinations supported by evidence on the record as a whole. See Def.'s Mem. Supp. Commr's Decision (Doc. #15) at 4-9.

   C.   *Analysis*

Turning to the first argument, the claimant challenges as unsupported by the record the ALJ's decision that the claimant did not meet or equal any Listing of Impairments. Specifically, the claimant argues the record "documents" his asthmatic impairment meets the requirements of Listing § 103.03C2, because the evidence shows "an absence of extended symptom[-]free periods requiring bronchodilators despite short courses of steroids averaging more than five days per month for at least three months during a twelve[-]month period." Plf.'s Br. (Doc. #12) at 4-5. Thus, the claimant argues the ALJ

5

did not properly evaluate his condition.

The Commissioner generally argues the ALJ properly determined the claimant's impairments did not meet or equal a Listed Impairment. With respect to Listing § 103.03C, the Commissioner concedes the claimant occasionally received prescriptions for corticosteroids to treat his asthma, but argues "there [i]s no evidence that his asthma was of such severity to meet or equal the listing such that he had persistent low grade wheezing <u>with</u> absences of extended symptom free periods." Def.'s Br. (Doc. #15) at 5.

The ALJ's discussion of this issue consists of four sentences. None addresses any specific listing, but rather generally concludes the claimant did not meet or equal any Listing.

> I must now determine whether the claimant's impairments result in "marked and severe" functional limitations. The first issue in this inquiry is whether the impairments, singularly or in combination, meet or medically equal in severity one set forth in the Listing of Impairments. No medical expert or treating or examining source has so concluded. In addition, I have reviewed the record and find that the evidence does not support such a conclusion.

Tr. at 16. In light of the generality of the ALJ's decision, it necessarily follows that the ALJ considered Listing § 103.03C in rendering his decision.

Section 103.03C of the Listing of Impairments provides, in relevant part, as follows: "Persistent low-grade wheezing between acute attacks <u>or</u> absence of extended symptoms-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with . . . .  2. Short courses of corticosteriods that average more than 5

6

days per month for at least 3 months during a 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03C. The listing does not require "persistent low grade wheezing <u>with</u> absences of extended symptom free periods," as the Commissioner maintains. Nor does it require wheezing between acute attacks <u>if</u> the child instead has an absence of extended symptom free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with short course cortiosteroids that average more than five days per month for at least three months during a twelve month period. See Listing § 103.03C2.

The medical evidence reveals not only that the claimant was prescribed short periods of corticosteroids–as the Commissioner concedes–but also bronchodilators. Xopenex and Albuterol are bronchodilators. See Physicians' Desk Reference at 102, 212 (2008). The medical evidence shows the claimant received prescriptions for or reported taking either Xopenex or Albuterol as follows: December 2, 2004 (Xonpenex with Pulmicort), December 20, 2004 (Xonpenex),[5] December 21, 2004 (Xonpenex with Pulmicort), January 20, 2005 (Xopenex with Pulmicort), April 12, 2005 (Xopenex with Pulmicort), April 27, 2005 (Albuterol with Pulmicort), and July 6, 2006 (Albuterol). Tr. at 82, 90, 162-63, 172, 186-87, 193.[6] It is obvious from these records the claimant received prescriptions for and/or used a bronchodilator as well as corticosteroids for some

---

[5]The Court points out the emergency room record dated December 10, 2004, does not clearly identify the medications the claimant used on that date. It appears Albuterol may have been noted. Tr. at 103.

[6]Indeed, the record also reveals Starks testified to the claimant's use of a breathing machine at the hearing, and the ALJ noted this testimony in his decision. Tr. at 16, 214.

time in December 2004, January 2005, and April 2005, a three month period during a twelve month period. These records, however, do not indicate the frequency in which the claimant took both the bronchodilator and the corticosteriods. The Court has found only one place in the record providing some insight on this issue. Tr. at 90 (indicating the claimant was first prescribed Albuterol on July 6, 2006, and took the medication 4 times a day with three refills permitted before July 2007). Because this information is relevant to whether the claimant meets or equals Listing § 103.03C, the ALJ had a duty to "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" McCloud v. Barnhart, 166 F. App'x. at 417 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) ("It is well-established that the ALJ has a basic duty to develop a full and fair record."). In light of the ALJ's failure to do so, the Court cannot conclude his decision is supported by substantial evidence and must reverse and remand that determination for further consideration consistent with this opinion.

The claimant next argues the ALJ erred in misstating the ME's testimony and then relying on that misstated testimony in rendering his Step 3 decision. The Court agrees. Because the ALJ's Step 3 decision reportedly resulted from a review of the record and specifically points out "[n]o medical expert or treating or examining source has" found the claimant has met or equaled a listed impairment, the ALJ's decision relies on the ME's testimony as evidence in support of his ultimate conclusion. Tr. at 16. The ME,

however, did not make an affirmative finding that the claimant met or equaled any listed impairment. The ME twice testified, in response to questions concerning the claimant's condition and whether he met or equaled a listing: "I don't have enough information here to give him a listing." Tr. at 217 (repeating "No, no, I don't have enough information for him to meet or equal a listing"). This testimony cannot support the ALJ's decision. While it is true no other medical expert or consulting source affirmatively found the claimant met or equaled a listed impairment, the ME's actual testimony, when combined with the medical evidence discussed immediately above, further demonstrates the ALJ's decision that the claimant does not meet or equal a listed impairment (including § 103.03C) is unsupported by substantial evidence. On remand, the ALJ shall reconsider what effect the ME's actual testimony has on this decision.[7]

## IV.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this opinion. A separate order will issue.

DONE this 18th day of April, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[7] In light of these findings, the Court need not reach the claimant's other arguments.

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

# CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).